IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DOMINICK DUBRAY, | ) | |
| | ) | |
| Petitioner, | ) | 8:17CV21 |
| | ) | |
| v. | ) | |
| | ) | |
| BRAD HANSEN, Warden, | ) | MEMORANDUM AND ORDER |
| Tecumseh Prison, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Dominick Dubray (Dubray or Petitioner) has filed a § 2254 motion seeking to set aside his murder conviction and sentence. After reviewing the answer of the Respondent, the evidentiary index and the briefs of the parties, the petition will be denied with prejudice.

### *Background*

Dubray and Catalina Chavez had lived together for 2 to 3 years in Alliance, Nebraska, with their child and Chavez' older child from a previous relationship. Chavez' 16-year-old half brother, Matthew Loutzenhiser, had also been living at their house since June 2011. Mike Loutzenhiser, who lived in Scottsbluff, Nebraska, was Chavez' stepfather and Matthew's father.

Dubray was found guilty of killing Chavez and Mike Loutzenhiser. He used at least one knife (and perhaps more) multiple times to stab and kill his victims after a long night of drinking with them.

Four other people had been drinking with Dubray and his victims until about 6:00 in the morning. Mike Loutzenhiser walked with Dubray and Chavez back to their nearby house after leaving the four others. A business surveillance camera captured

them walking back to the house around 6:00 a.m. The killings took place at about 6:45 a.m.

After the killings, Dubray stabbed himself numerous times. At least one wound was very serious and life threatening. Dubray told at least three witnesses, who were relatives or friends of his, and who arrived at the scene after the killings, that he wanted to die and did not want to go to prison.

He told one witness that his girlfriend Chavez was going to leave him, and "I can't believe what I have done." Dubray was thinking straight enough that he had called one of these witnesses on the phone to come over to the house to take care of his small child. As the Nebraska Supreme Court later observed, the case against Dubray was strong, and the most damning evidence of Dubray's guilt was his own statements to witnesses who had no reason to lie about them.

On October 12, 2012, a jury found Dubray guilty of two counts of murder and two counts of using a deadly weapon to commit a felony. Dubray received two consecutive life sentences for the murders and 30 to 40 years for each of the counts regarding use of a deadly weapon.

Two new and very experienced lawyers from the excellent Nebraska Commission on Public Advocacy were appointed to represent Dubray in the direct appeal. However, the direct appeal was not successful. *State v. Dubray*, 854 N.W.2d 584 (Neb. 2014). (*Dubray 1*.) The decision spans roughly 43 pages on WestLaw.

Dubray then filed a state post conviction motion which was denied without an evidentiary hearing. That decision was affirmed by the Nebraska Supreme Court. *State v. Dubray*, 885 N.W.2d 540 (Neb. 2016) (*Dubray 2*). The decision spans roughly 27 pages on WestLaw.

This habeas petition followed. Respondent does not assert that Petitioner's action is time-barred.

*Claims*

I previously dismissed with prejudice a variety of claims because they did not set forth any cognizable federal issues. (Filing no. 7.) Summarized and condensed, the remaining claims are these:

**Claim One**: Dubray was denied effective assistance of trial counsel for failing to: (1) obtain a competency hearing or examination; (2) move to suppress certain exhibits; (3) call a single witness and present a complete defense; (4) address the illegally seized property; (5) raise that certain jurors were not questioned during voir dire; (6) strike a pro-prosecution juror; (7) confront state witnesses and properly cross examine them; (8) object to prejudicial remarks from the prosecutor or the fact that no evidence was presented at the sentencing hearing; and (9) call a psychiatrist to determine mental competency. (Filing no. 7 at CM/ECF p. 2; filing no. 1 at CM/ECF p. 6.)

**Claim Two**: Dubray was denied effective assistance of appellate counsel for failing to: (1) raise issues of competency and insanity or to attack trial counsel for failing to do so; (2) appeal the denial of a suppression motion; (3) raise the existence of biased pro prosecution witnesses; and (4) attack trial counsel for lack of a zealous defense such as the failure to present lay or expert witnesses. (Filing no. 7 at CM/ECF p. 2.)

**Claim Three**: Dubray was denied due process of law as a result of prosecutorial misconduct in that: (1) the prosecutor failed to turn over exculpatory notes of several witnesses some or all of whom may have been expert witnesses; (2) the prosecutor misstated the evidence in closing argument; (3) the prosecutor forced Dubray to appear in court in leg shackles in front of the jury; (4) the prosecutor failed to seek a competency hearing of Dubray; (5) the prosecutor appeared as both a prosecutor and witness; and (6) the prosecutor failed to call Megan Reza as a witness. (*Id.*)

**Claim Four:** The trial court denied Dubray due process of law when the trial judge failed to order a competency hearing sua sponte. (*Id.*)

### *Summary of Decision*

Respondent asserts, and I agree, that Claims One, Three, Four and a portion of Claim Two have been procedurally defaulted without a showing of anything sufficient to excuse the default. Respondent asserts that the remainder of Claim Two has no substantive merit. I also agree.

### *Exhaustion and Procedural Default*

As set forth in 28 U.S.C. § 2254:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B)    (i)    there is an absence of available State corrective process; or

        (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims

before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts *before* seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### *Nebraska Law Relevant to Procedural Default*

Under Nebraska law, you don't get two bites of the postconviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003).

Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased."); *State v. Filholm*, 848 N.W.2d 571, 576 (Neb. 2014) ("*When a defendant's trial counsel is different from his or her counsel on direct appeal*, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred."). (Italics added.)

Note also that Nebraska has a statute of limitations for bringing postconviction actions that is similar to federal law. It reads:

4) A one-year period of limitation shall apply to the filing of a verified motion for postconviction relief. The one-year limitation period shall run from the later of:

(a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;

(b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;

(c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or

(e) August 27, 2011.

Neb. Rev. Stat. Ann. § 29-3001(4) (West).

## *Deference Under 28 U.S.C. § 2254(d)*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id*. However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

### The Especially Deferential *Strickland* Standard

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for offenders to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal

of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

The Supreme Court has recently emphasized that *Strickland* applies equally to appellate counsel, and that appellate counsel is entitled to the "benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (a "fairminded jurist" could have concluded that repetition of anonymous tip in state-court cocaine-possession trial did not establish that the uncontested facts it conveyed were submitted for their truth, in violation of the Confrontation Clause, or that petitioner was prejudiced by its admission into evidence, precluding federal habeas relief under Antiterrorism and Effective Death Penalty Act (AEDPA); Petitioner could not establish that Petitioner's appellate counsel was ineffective, as appellate counsel was entitled to the "benefit of the doubt").

### *Procedurally Defaulted Claims*

*Claims One, Three and Four–Ineffective Trial Counsel, Prosecutorial Misconduct and Trial Court Error*

It appears that all of the allegations set forth in Dubray's first, third, and fourth habeas claims were raised in his state postconviction motion. (*See* filing no. 9-12 at CM/ECF pp. 2-32.) The Nebraska Supreme Court, however, did not reach the merits of those claims because Dubray could have raised those claims of ineffective assistance of trial counsel, prosecutorial misconduct, and trial court error on direct

appeal, and thus, were procedurally barred in the state postconviction action. *Dubray 2*, 885 N.W.2d at 551-54.[1]

This decision of the Nebraska Supreme Court was based on a Nebraska procedural rule. *See*, *e.g.*, [State v. Hessler](#), 807 N.W.2d 504, 514 (Neb. 2011) ("A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and could have been litigated on direct review"). Therefore, Dubray's first, third, and fourth habeas claims have been procedurally defaulted. In this vein, Dubray has not come to close to showing a valid reason to excuse the defaults.[2]

*Claim Two–Ineffective Appellate Counsel and Competency*

The Nebraska Supreme Court rejected Dubray's claim that appellate counsel was ineffective–for failing to assert that trial court erred in not conducting a competency hearing, and for failing to assert that trial counsel was ineffective for not requesting one–pursuant to a state procedural rule requiring factual specificity. *See*, *e.g.*, [State v. Starks](#), 883 N.W.2d 310, 317 (Neb. 2016) ("Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable."). The Nebraska

---

[1] In this post-conviction appeal, to the extent the Nebraska Supreme Court considered on the merits the failure of trial counsel to call a specific witness (Megan), 885 N.W.2d at 553-554, the Nebraska Supreme Court's decision, evaluated under the doubly deferential *Strickland* standard, easily survives federal scrutiny. The same holds true for all the ineffective assistance of trial and appellate counsel claims mentioned in *Dubray 2* (or, for that matter, in *Dubray 1*). Indeed, I have independently evaluated all of the ineffective assistance of counsel claims–whether they be asserted against trial counsel or appellate counsel. None of them have merit when *Strickland* is properly applied even if no deference is accorded the Nebraska Supreme Court.

[2] This is true for all of the procedurally defaulted claims.

Supreme Court found that Dubray's postconviction motion merely asserted that he was not provided with a competency hearing and that he was

> 'tried while incompetent.' His statement that he was tried while incompetent is a conclusory assertion of law. He alleges no facts that would show that he was, in fact, incompetent to stand trial. The district court was correct in concluding that these allegations were insufficient and that Dubray was not entitled to an evidentiary hearing on them.

*Dubray 2*, 885 N.W.2d at 555.

*Claim Two–Ineffective Appellate Counsel and Failure to File Suppression Motion*

The Nebraska Supreme Court did not address the merits of this portion of the claim pursuant to the same state procedural rule stated immediately above. The court ruled:

> Dubray presents another layered ineffective assistance claim based on his trial counsel's failure to move to suppress the three knives introduced at trial and failure to preserve the issue for direct appeal. As the district court correctly noted, Dubray's motion failed to "allege[ ] any basis in law or fact which would support suppression of the evidence." Because Dubray has not alleged any basis for the suppression of this evidence, he has not made a viable claim of ineffective assistance of counsel for not raising the issue.

*Id.*

*Claim Two: Ineffective Appellate Counsel and Pro-Prosecution Witnesses (or Jurors)*

If Dubray meant to attack appellate counsel for failing to attack trial counsel for failing to object to pro-prosecution witnesses, that claim was never presented to the Nebraska Supreme Court. It is therefore procedurally defaulted. Furthermore, the state statute of limitations has run out.

On the other hand, Dubray did attack appellate counsel for failing to attack trial counsel for failing to object to or to move to strike pro-prosecution jurors. But *Dubray 2* decided that that the assertions were mere conclusions and raised "not even an inference of bias." *Id.* at 556 (subsection g). Thus, this claim, like the previous claims, is procedurally defaulted. That is, the Nebraska Supreme Court did not address the merits as Dubray provided no adequate factual basis for his assertion.

*Claim Two: Ineffective Appellate Counsel and Failure to Present Witnesses*

Again, Dubray provided no factual basis for the argument that appellate counsel should have asserted that trial counsel was ineffective for failing to present witnesses on behalf Dubray. The Nebraska Supreme Court stated, "Dubray asserts another layered claim based on his trial counsel's failure to call any expert witnesses or character witnesses. However, he fails to make any allegations as to what any of these witnesses would have testified." *Id.* at 557. Having provided no adequate factual basis for his assertion, Dubray procedurally defaulted this claim as well.

### Parts of Claim Two That Were Fully Considered But Lack Merit

The Respondent concedes that two issues set forth in Claim Two were considered on the merits. One issue relates to the failure of appellate counsel to attack trial counsel for not asserting an insanity defense. The other relates to trial counsel's alleged failure to present a zealous defense, and appellate counsel's failure to assert that issue on direct appeal. Both of these issues were addressed in *Dubray 2*.

As for the insanity issue and the claim against appellate counsel, the Nebraska Supreme Court discussed this issue in detail. It wrote:

Dubray asserts a layered claim based on trial counsel's failure to investigate and assert an insanity defense. The district court rejected

these claims, stating that "[t]here is no allegation that would suggest [Dubray] had any basis for an insanity defense."

Nebraska follows the M'Naghten rule as to the defense of insanity. The two requirements for the insanity defense are that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong.

As we have said, "bald assertions of insanity, unsubstantiated by a recital of credible facts and unsupported by the record, are wholly insufficient and justify the summary dismissal of a post conviction proceeding." On their own, Dubray's assertions are conclusory and fail to allege any facts that would tend to show insanity. Moreover, the record shows that these claims of insanity are without merit. As this court said when discussing the issue of intoxication in Dubray's direct appeal:

> [T]he evidence shows that Dubray was not wholly deprived of reason immediately before or after the murders. As explained, Dubray, Chavez, and Loutzenhiser walked back to Dubray's house around 6 a.m. No witness testified that Dubray was behaving unreasonably at his aunt's house at this time. By 6:49 a.m., Dubray had killed Chavez and Loutzenhiser and called Reza to take care of his child. By the time Reza arrived a few minutes later, Dubray had also attempted suicide for the first time. But his concern for his daughter and his conduct after the murders showed he was contemplating how to respond to his imminent arrest. He specifically told Marco and Reza that he intended to kill himself to avoid prison, and he insisted that they not call Little Hoop so that [Dupray] could carry out this [suicide] plan. He was clearly reasoning and anticipating the consequences of the acts he had just committed.

The record belies Dubray's conclusory claims of insanity. Because these claims are without merit, Dubray did not suffer prejudice by his trial counsel's failure to raise the issue.

*Id.* at 557-587 (footnotes omitted).

Whether viewed from a legal point of view or a factual point of view, the Nebraska Supreme Court's decision did not violate clearly established federal law and it was not based on an unreasonable determination of the facts.

Regarding the failure of trial counsel to present a zealous defense, and appellate counsel's failure to allege that as error on direct appeal, the Nebraska Supreme Court considered and rejected this assertion. The Nebraska Supreme Court reasoned:

Dubray presents a layered claim of ineffective counsel based on the claim that his trial counsel did not put the prosecution's case to "meaningful adversarial testing." In cases where counsel completely fails to submit the State's case to meaningful adversarial testing, prejudice to the defendant will be presumed. But when the record shows that the State's witnesses were thoroughly cross-examined consistent with the defense theory, there was meaningful adversarial testing of the prosecution's case.

Dubray specifically claims that his trial counsel failed to cross-examine many of the State's witnesses and failed to object to any evidence. But his allegations are directly refuted by the record of his trial. Dubray's trial counsel conducted cross-examinations of most of the prosecution's witnesses in a thorough manner and consistent with the defenses of self-defense or sudden quarrel. His counsel further objected to several pieces of evidence, including through a pretrial motion in limine. The prosecution's case was put to meaningful adversarial testing. Because there was meaningful adversarial testing, the district court was correct to reject this claim.

*Id.* at 556 (footnotes omitted).

Again, whether viewed from a legal point of view or a factual point of view, the Nebraska Supreme Court's decision did not violate clearly established federal law and it was not based on an unreasonable determination of the facts.

### *No Certificate of Appealability*

Finally, a petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED the petition for writ of habeas corpus under 28 U.S.C. § 2254 (filing no. 1) is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. A separate judgment will be entered.

DATED this 18th day of August, 2017.

BY THE COURT:

*s/ Richard G. Kopf*
Senior United States District Judge